IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| MONIKA DROZDOWSKI and, | ) | |
| ROBERT DROZDOWSKI, on behalf of | ) | |
| themselves and all other similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 2:15-cv-2786-STA-cgc |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

ORDER GRANTING MOTION TO COMPEL ARBITRATION,
DENYING CLASS CERTIFICATION, AND
STAYING CASE PENDING COMPLETION OF ARBITRATION
_____

Plaintiffs Monika Drozdowski and Robert Drozdowski filed this purported class action against Defendant Citibank, Inc., for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). (ECF No. 1.) Defendant has moved to compel arbitration.[1] (ECF No. 12) The parties have fully briefed the Court. For the reasons set forth below, Defendant's motion seeking to compel arbitration is **GRANTED**.

The TCPA was enacted to regulate the growth of the telemarketing industry based on a determination by Congress that "[u]nrestricted telemarketing . . . can be an intrusive invasion of

___

[1] Defendant initially moved to compel arbitration on January 26, 2016. (ECF No. 7.) After Plaintiffs filed an amended complaint (ECF No. 9), the Court denied Defendant's motion to compel without prejudice, allowed Defendant to file an amended motion to compel, and set a briefing schedule for the amended motion to compel. (ECF No. 11.)

1

privacy."[2] The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."[3] The TCPA provides a private cause of action to persons who receive such calls.[4]

The TCPA also makes it unlawful for any entity to make more than one call in a twelve-month period to any number that is registered with the National Do-Not-Call Registry or the entity's internal do-not-call list.[5] A listing on the National Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."[6] Internal requests must be honored for five

---

[2] Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (Congress enacted the TCPA to protect individual consumers from receiving intrusive and unwanted telecommunications).

[3] 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also* 47 C.F.R. § 64.1200(f)(2) ("The terms automatic telephone dialing system and autodialer mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.").

[4] 47 U.S.C. § 227(b)(3).

[5] 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). FCC regulations require that entities that use telemarketing maintain internal do-not-call lists.

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

[6] *Id.*

years.[7] Persons receiving calls in violation of this portion of the TCPA are also provided with a private cause of action.

In the amended complaint, Plaintiffs allege that Citibank called Plaintiffs' "cellular telephone number" using dialing equipment regulated by the TCPA without Plaintiffs' consent in connection with certain credit card accounts.[8] Plaintiffs contend that letters sent in April 2013 in connection with three accounts issued by Citibank to Robert Drozdowski advised Citibank that he was represented by counsel.[9] Despite being told to contact Plaintiff's attorney, Citibank allegedly continued to make calls to Robert Drozdowski in an effort to collect a debt.[10]

Plaintiffs also contend that, at some point after September 2013, Monika Drozdowski revoked consent to call her.[11] Plaintiffs allege that Citibank continued to make calls to Monika Drozdowski until Plaintiffs threatened to call the police.[12] Plaintiffs contend that Citibank's actions are in violation of the TCPA. They allege that other consumers have received similar TCPA violative calls from Citibank, and, therefore, they ask the Court to certify a class and appoint them as the class representative.[13]

At issue are the following credit card accounts that were issued to Plaintiffs: (1) a Citibank MasterCard account currently ending in 6589 (formerly ending in 8358, 6510), issued

---

[7] 47 C.F.R. § 64.1200(d)(6).

[8] (Am. Compl. ¶¶ 20-28, ECF No. 9.)

[9] (*Id.* at ¶¶ 11-15, Exs. A, B & C.)

[10] (*Id.* at ¶¶ 19-22.)

[11] (*Id.* at ¶¶ 20, 23-25.)

[12] (*Id.* at ¶ 28.)

[13] (*Id.* at ¶¶ 38 – 60.)

3

to Robert Drozdowski in February 1999 ("Citi Account I"); (2) an AT&T Universal Card account currently ending in 0612 (formerly ending in 8132) issued to Robert Drozdowski in January 2001 ("Citi Account II"); (3) a Citibank MasterCard account currently ending in 5319 (formerly ending in 2709 and 5589) issued to Monika Drozdowski in October 2013 ("Citi Account III"); and (4) a Sears MasterCard account currently ending in 9117 issued to Robert Drozdowski in the early 2000s ("Citi Account IV") (collectively, the "Accounts").[14]

Citibank has responded to the amended complaint with a motion to compel arbitration. (ECF No. 12.) According to Citibank, Plaintiffs' claims must be arbitrated on an individual, non-class basis pursuant to the binding arbitration agreements (collectively, the "Arbitration Agreement") between Plaintiffs and Citibank contained in the card agreements governing the Accounts. The Court finds Citibank's motion to be meritorious.

The Federal Arbitration Act ("FAA") states that a "written provision" in a contract providing for "settle[ment] by arbitration" of "a controversy ... arising out of" that "contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[15] The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[16] "[A]ny doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that [an]

---

[14] (Walters Decl. ¶ 6, ECF No. 12-1.)

[15] 9 U.S.C. § 2.

[16] *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when interpreting arbitration agreements, courts "should apply ordinary state-law principles that govern the formation of contracts").

arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[17] "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."[18] The FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration.[19] The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.[20]

The Sixth Circuit generally uses four factors to determine when to grant a motion to compel arbitration: "(1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration."[21]

As an initial matter, the Court notes that Plaintiffs filed a "notice of supplemental authority" regarding the evidentiary value of exemplar credit card agreements. Plaintiffs point out that Citibank failed to include a copy of the original Sears MasterCard contract that Robert

---

[17] *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007).

[18] *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

[19] *See Stevens-Bratton v. TruGreen, Inc.*, 2016 WL 155087 at *4 (W.D. Tenn. Jan. 12, 2016).

[20] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) ("We have held that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue.").

[21] *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (*citing Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

Drozdowski executed and reason that Citibank "thereby fail[ed] to provide the Court with necessary evidence establishing that Citibank even had a right in the first place to amend the original contract" to include an arbitration clause.[22] Instead of the original agreement, Citibank submitted an exemplar card agreement in effect as of 1998 and a "change in terms notice" in effect since 2003.[23]

Plaintiffs are correct that the Court in *Danley v. Encore Capital Grp., Inc.*, 2015 WL 7733450 (E.D. Mich. Dec. 1, 2015), issued an opinion addressing the evidentiary value of credit card agreement exemplars and questioning whether "the sample or embedded credit card agreements provided by defendants are the same agreements accepted by plaintiffs."[24] The *Danley* Court pointed out that "[u]nauthenticated sample credit card agreements, one dated many years after the credit card was first used and therefore accepted by plaintiff is not the type of evidence the court can use to support an order compelling arbitration."[25] Despite this language, the opinion did not hold that credit card agreement exemplars may not be used to compel arbitration but only that *unauthenticated* exemplars are of questionable evidentiary value.

In a subsequent order granting the motion to compel arbitration, the *Danley* Court noted that, following its previous order, the defendants had met their evidentiary burden by submitting a declaration that authenticated the exemplar.

> Plaintiffs first question whether the exemplar credit card agreements provided by defendants are enforceable because defendants have not produced the original agreements signed by the plaintiffs. The last time the court considered the issue it was not convinced that the sample or embedded credit card agreements provided

---

[22] (Notice, p. 1, ECF No. 22.)

[23] (Pogwist Decl., ECF No. 21-2.)

[24] 2015 WL 7733450 at *3.

[25] *Id.*

by defendants were the same agreements accepted by plaintiffs. Defendants have now produced declarations from the custodian of the accounts of the original creditor, in the case of Citibank, who in turn attached the relevant exemplar contract documents, as well as copies of actual statement transaction details from plaintiffs' credit card accounts. In the case of the Chase account, defendants provide the Affidavit of Sale of Account by Original Creditor, which attests to the validity of the records that make up the accounts, including an exemplar cardmember agreement and actual statement transaction details. (Burger Decl. Ex. O). Plaintiffs have not come forward with any evidence to rebut that the agreements that have been produced are the same as those entered between plaintiffs and the original creditors. *See, e.g., Coppock v. Citigroup, Inc.,* 2013 U.S. Dist. LEXIS 40632, *12-13, 2013 WL 1192632 (W.D. Wash. March 22, 2013) (accepting an "exemplar" agreement [when] the plaintiff "produced no evidence that the 2001 agreement (an exemplar of which Citi submitted with its motion) is not the agreement that governed her account.")[26]

In the present case, Citibank has submitted the declaration of its employee Elizabeth Barnette who has "access to the business records related to the credit card accounts issued by Citibank including, in particular, the records of cardmember accounts and the applicable card agreements."[27] Barnette references the declaration of another employee, Cathleen Walters, and the exemplar card agreement attached to the Walters declaration for Citi Account III and states that the exemplar is a "true and correct business record created and maintained by Citibank, or its affiliates, in the court of regularly conducted business activity."[28] Walters also authenticates the exemplars for Citi Accounts I and II in her declaration.[29] Additionally, Citibank has submitted the declaration of its employee Andrew Grayot which authenticates the exemplar for Citi Account IV.[30]

---

[26] *Danley v. Encore Capital Grp., Inc.*, 2016 WL 2851343 at *4 (E.D. Mich. May 16, 2016).

[27] (Barnette Decl. ¶ 2, ECF No. 21-1.)

[28] (*Id.* at ¶¶ 3-4 (citing Walters Decl. ECF No. 12-1).)

[29] (Walters Decl. ¶¶ 9-22 (Citi Account I), ¶¶ 23-26 (Citi Account II), ECF No. 12-1.)

[30] (Grayot Decl., ECF No. 12-2.)

7

As in *Danley*, Plaintiffs have not pointed to any evidence to show that the agreements and exemplars that have been produced are not the same as those entered between Plaintiffs and Citibank. Therefore, the supplemental authority submitted by Plaintiffs is unavailing, and Citibank may rely on the agreements and exemplars attached to its motion to compel arbitration.

The card agreements governing the Accounts in the present case include a choice of law provision that provides for the application of federal and South Dakota law.[31] "Tennessee courts 'will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy,'" factors which are present in this case.[32] Thus, while the FAA governs the enforceability of the Arbitration Agreement, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.[33] South Dakota law, like federal law, favors arbitration. "If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail."[34]

---

[31] (Walters Decl., ECF No. 12-1; Grayot Decl., ECF No. 12-2.)

[32] *GTP Structures I, LLC v. Wisper II, LLC*, 2015 WL 9413890 at *3 (W.D. Tenn. Dec. 22, 2015) (quoting *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012)).

[33] *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1193-94 (S.D. Cal. 2013) (holding that South Dakota law applied under Citibank's choice of law provision and applicable choice of law test); *see also Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 44 (S.D. 1999) (noting that, "the question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles").

[34] *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration . . . . There is an overriding policy favoring arbitration when a contract provides for it.").

Turning to the four factors used to decide whether to grant a motion to compel arbitration,[35] the Court must first determine whether the parties agreed to arbitrate disputes that might arise during their relationship. As evidence that the parties did so agree, Citibank has pointed out that each of the Accounts at issue is governed by a card agreement that contains an Arbitration Agreement. The Arbitration Agreement was added to Citi Accounts I and II through a change-in-terms notice mailed to Robert Drozdowski,[36] was contained in the card agreement mailed to Monika Drozdowski when she opened her Citi Account III,[37] and was added to Citi Account IV through a change-in-terms notice and a new agreement mailed to Robert Drozdowski.[38]

Regarding Citi Account I, Robert Drozdowski contends that the change-of-terms provision in the original card agreement only permitted Citibank to change the existing terms and not to add terms. The provision states that Citibank "can change this Agreement" and explains how and when a cardholder can opt-out of a change or "accept[ ] the new terms."[39] In accordance with this provision, in 2001 Citibank notified Robert Drozdowski that it was changing his existing card agreement to include a provision regarding binding arbitration, which was a "new term" that was accepted when Robert Drozdowski chose not to opt-out.[40]

---

[35] *See Andrews*, 596 F. App'x at 371 (*citing Fazio*, 340 F.3d at 392).

[36] (Walters Decl., ¶ 9, ECF No. 12-1.)

[37] (*Id.* at ¶ 29.)

[38] (Grayot Decl. ¶ 6, ECF No. 12-2.)

[39] (Walters Decl., Ex. 1, p. 13, ECF No. 12-1.)

[40] (*Id.* at pp. 16-19.)

9

Robert Drozdowski also had the opportunity to opt out of the Arbitration Agreement for Citi Accounts II and IV but chose not to do so.[41] Additionally, he had the opportunity to opt out of subsequent changes to the Arbitration Agreement in 2005 but did not do so.[42] Instead, he kept the Accounts open.[43]

Citibank acquired the Sears credit card program in 2003 and, at that time, informed Robert Drozdowski that it was "making certain changes to the terms of your Sears Credit Card Account Agreement, including changes regarding binding arbitration of disputes and the law governing your Account."[44] He had the opportunity to opt-out of these changes, as well as changes in 2009, but he chose not to, and continued to use the account for purchases.[45] Robert Drozdowski kept Citi Account IV open until after this lawsuit was filed.[46]

Robert Drozdowski was sent a new card agreement in 2010 for this account, which also contained an arbitration provision.[47] He argues that Citibank cannot rely on the 2010 card agreement without producing the original agreement that governed the account when it was opened. However, he has produced no evidence that the 2010 card agreement is not the agreement that governed his Sears account.

---

[41] (*Id.* at ¶¶ 17-18, 24, Exs. 2, 9; Grayot Decl. ¶¶ 9-10, ECF No. 12-2.)

[42] (Walters Decl. ¶¶ 21, 25, ECF No. 12-1.)

[43] (*Id.* at ¶¶ 22, 26.)

[44] (Pogwist Decl. ¶ 7 & Ex. 6, ECF No. 21-2.)

[45] (*Id.* at ¶¶ 8-9; Grayot Decl. ¶¶ 9-10, Doc. 12-2.)

[46] (Grayot Decl. ¶¶ 14-16, ECF No. 12-2.)

[47] (Walters Decl., Ex. 7. pp. 37-43, ECF No. 12-1.)

Under South Dakota law at the time of the relevant events, credit card issuers were authorized to change the terms of their existing credit card agreements by sending notices of the changed terms to cardholders.[48] The addition of an arbitration provision is one such change to the agreement.[49] As explained by the District Court for the Northern District of California:

> [T]he original agreement and subsequent modifications by Sears do not necessarily control the enforceability of the arbitration clause presently in effect with Citibank. The Court concludes that, regardless of whether the original agreement with Sears contained an arbitration provision, arbitration must be compelled here. Plaintiff could have opted out of her entire credit agreement with Citibank at or after November 2003, when Citibank issued a new agreement containing an arbitration clause and opt-out opportunity, upon acquiring her account from Sears. Instead, plaintiff accepted Citibank's terms through her subsequent use of the card.[50]

In this case also, Plaintiffs used the Accounts after receiving the change-in-terms notices and the card agreement.[51] Under South Dakota law, Plaintiffs' use of the Accounts constitutes their acceptance of the terms of the card agreement, including the Arbitration Agreement.[52]

---

[48] *See* S.D. Codified Laws § 54–11–10 (repealed by 2015 Sess. Laws 24).

[49] *See, e.g., Eaves-Leonos v. Assurant, Inc.*, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008), as amended (Jan. 10, 2008) (finding that Citibank validly amended the card agreement to include a new arbitration agreement when the original agreement "expressly allow[ed] for Citibank to change the terms of the agreement," and "the Attorney General of South Dakota has issued an opinion expressly authorizing the addition of an arbitration agreement to a credit card agreement in the manner used by Citibank"). Both *Eaves-Leonos* and the present case involve the same arbitration agreement.

[50] *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012).

[51] (Walters Decl., ECF No. 12-1; Grayot Decl., ECF No. 12-2.)

[52] *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); *McCormick v. Citibank, NA*, 2016 WL 107911 at *4 (holding that use of credit card after receipt of change-in-terms notice constitutes acceptance of such terms); *Cayanan*, 928 F. Supp. 2d at 1199 (holding that under South Dakota law "continued use of a credit [card] account" constitutes assent to arbitration); *Ventura v. 1st Fin'l Bank*, 2005 WL

Plaintiffs argue that Citibank has failed to provide specific details about the manner in which Monika Drozdowski entered into the agreement for Citi Account III. Citibank has submitted evidence that she was provided the card agreement containing the Arbitration Agreement when she opened her Citibank account in October 2013.[53] In the thirty days after issuance, she did not cancel the account, and the account remained open as of January 2016 and carried a balance.[54] Her use of the card is evidenced by the periodic billing statements for the account.[55] Thus, Monika Drozdowski became bound by the Arbitration Agreement.

The Court finds that, by failing to opt-out and using the credit cards after the amendments to the card agreements, both Plaintiffs "assented to the terms of the arbitration agreement"[56] and agreed to arbitrate.

Next, the Court looks at the scope of the Arbitration Agreement. Once it is determined that the parties have agreed to binding arbitration, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[57] Arbitration agreements that apply to "any claim" relating to the parties' agreement or their relationship are "deemed to

---

2406029 at *5 (N.D. Cal. Sept. 29, 2005) (noting that § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card").

[53] (Walters Decl. ¶ 29, Doc. 12-1.)

[54] (*Id.* at ¶ 30.)

[55] (Barmett Decl., ECF No. 21-2.)

[56] *Coppock*, 2013 WL 1192632 at *4.

[57] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (distinguishing between broad clauses that refer all disputes arising out of a contract to arbitration and narrow clauses that limit arbitration to specific types of disputes).

be broadly written."[58] "Once an arbitration clause is deemed to have been broadly written, 'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators.'"[59]

The card agreements contain the following Arbitration Agreement, which provides that either party can elect mandatory binding arbitration:

> **ARBITRATION:**
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> **Agreement to Arbitrate:**
> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> Claims Covered:
> • **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an

---

[58] *Stevens-Bratton*, 2016 WL 155087 at *6 (citations omitted).

[59] *Id.* (citations omitted).

individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

\* \* \*

• **Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").[60]

By its terms, the Arbitration Agreement applies to "any claim, dispute, or controversy" between Plaintiffs and Citibank relating to the accounts and/or Plaintiffs' "relationships" with Citibank. The Arbitration Agreement also explicitly states that it must be enforced pursuant to the FAA.

Monika Drozdowski argues that her claim falls outside the scope of the Arbitration Agreement because the calls did not relate to her own account, Citi Account III. According to Plaintiffs, she was not an authorized user of Citi Account IV, and Citibank made calls to her concerning her husband's alleged lack of payments on Citi Account IV.[61]

As noted by Citibank, the parties contractually agreed that, to the extent a disagreement arose regarding the "application, enforceability, or interpretation" of the Arbitration Agreement, it would be decided by an arbitrator.[62] The parties further agreed that "[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration

---

[60] (Walters Decl., Exs. 2, 9, 14, ECF No. 12-1; Grayot Decl., Exs. 1, 4, ECF No. 12-2 (bolding in original).)

[61] (R. Drozdowski Decl., ¶ 8, ECF No. 16-2.)

[62] (Walters Decl., p. 78, ECF No. 12-1.) *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

provision is the broadest way the law will allow it to be enforced."[63] Because the arbitration provision is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrator."[64]

Here, the underlying conduct for the alleged TCPA violations, i.e., Citibank's calls to Monika Drozdowski's cell phone, relates to and implicates her relationship with Citibank. The Arbitration Agreement applies to any claim relating to "our relationship."[65] Plaintiffs have not shown that Monika Drozdowski's claim does not relate to her relationship with Citibank or that it falls outside the broad scope of the Arbitration Agreement. "[T]he parties should be compelled to arbitration unless it can be said with 'positive assurance' that the party's claims do not fall

---

[63] (Walters Decl., p. 78 ECF No. 12-1.)

[64] *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)).

[65] *See Regions Bank v. Chanda*, 2011 WL 4352722 (W.D. Tenn. Sept. 16, 2011) (finding that deposit-account agreements' arbitration clause covering any "transaction, business, contact, interaction or relationship" was so broad as to apply to claims arising from an unrelated escrow account); *see also* Cara's *Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) (finding that a broad arbitration clause covering "[a]ny controversy or claim" relating to "any aspects of the relationship" applied to all conflicts between the parties, regardless of whether the conflict related to the specific contract containing the arbitration provision); *Carr v. Citibank, N.A.*, 2015 WL 9598797 at *3 (S.D.N.Y. Dec. 23, 2015) ("The Card Agreement contemplates the arbitration of any claim related to the parties' relationship, and the existence of consent to contact the plaintiff via telephone undeniably implicates the parties' relationship with each other.").

15

within the scope of the Arbitration Agreement."[66] Thus, Monika Drozdowski's claim is subject to the Arbitration Agreement.[67]

Plaintiffs also argue that Robert Drozdowski's claim falls outside the scope of the agreements. Plaintiffs allege that Citibank violated the TCPA by calling his cell phone "in an attempt to collect Robert's debt owed on the Sears Mastercard" after "Robert's attorney sent Citibank a notice of representation letter regarding a debt owed on the Sears Mastercard."[68] Clearly, these allegations relate to Robert Drozdowski's account and relationship with Citibank. Because the Arbitration Agreement expressly extends to Plaintiffs' "relationship" with Citibank, as well as the Accounts, the claims asserted are within the scope of the Arbitration Agreement.

Next, the Court must decide whether Congress intended TCPA claims to be arbitrable. Plaintiffs argue that Congress did not intend TCPA claims to be arbitrable given the TCPA's legislative purpose and statutory design. As the opponents of arbitration, Plaintiffs have the burden of establishing that Congress intended to disallow arbitration, either by pointing to evidence within the statute's text or legislative history or by showing an irreconcilable conflict between arbitration and the TCPA's underlying purposes.[69] "Throughout such an inquiry, it

---

[66] *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 761-62 (E.D. Tenn. 2011) ("Given the broad scope of the arbitration clause—and the presumption that comes with it—it is Plaintiff's burden to establish that her claims are not subject to arbitration.").

[67] *See, e.g., Lezell v. USAA Sav. Bank*, 2016 WL 1212368 at *1 (E.D.N.Y. Mar. 28, 2016) ("[P]laintiffs assert that their TCPA claims are not within the 'scope' of the arbitration addenda because their claims do not 'arise from' or 'relate to' their credit card account. But the arbitration addenda refer such questions to an arbitrator to decide.").

[68] (Resp., p. 3, ECF No. 16.)

[69] *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."[70]

Although Plaintiffs contend that a class action is necessary to vindicate a large number of consumers' rights, they have not identified any right created by the TCPA that would not be available in individual arbitration proceedings.[71] Nor have they presented any evidence to show that arbitration would be prohibitively expensive.[72] Moreover, Plaintiffs have cited no cases which have held that claims under the TCPA are nonarbitrable, whereas Citibank has cited several cases which have "considered the issue [and] have found nothing in the text or legislative history of the TCPA to suggest that Congress intended TCPA claims to be nonarbitrable."[73] Other cases have found TCPA claims to be subject to arbitration without expressly addressing the issue of whether Congress intended those claims to be arbitrable.[74] Accordingly, Plaintiffs have failed to meet their burden of showing that the TCPA displays an intention to preclude a waiver of judicial remedies.

---

[70] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[71] *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2301 & 2312 n. 5 (2013) (recognizing that "congressional approval of Rule 23 [does not] establish an entitlement to class proceedings for the vindication of statutory rights" and "that the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims").

[72] *See Snow v. Citibank, N.A.*, 2015 WL 799543 at *9 (E.D.N.C. Feb. 25, 2015).

[73] *McCormick*, 2016 WL 107911 at *5; *see also Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379 (N.D. Ind. Feb. 11, 2014).

[74] *See*, *e.g.*, *Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157 (7th Cir. 2015) (ordering arbitration of a lawsuit for alleged violation of the TCPA); *Weingarten v. Colony Brands, Inc.*, 2013 WL 4482836 (D. Conn. Aug. 21, 2013) (determining that plaintiff's TCPA claim fell within scope of arbitration clause); *Sherman v. RMH, LLC,* 2014 WL 30318 (S.D. Cal. Jan. 2, 2014) (same).

Based on this analysis, the Court finds that Plaintiffs' claims must be arbitrated.[75] Accordingly, Citibank's motion to compel arbitration is **GRANTED**.

The Court must enforce the Arbitration Agreement as written, including the language requiring arbitration on an individual, non-class basis.[76] Here, the Arbitration Agreement expressly provides that "[c]laims and remedies sought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis and the arbitrator may award relief only on an individual (non-class, non-representative) basis," and "neither you, we or any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action."[77] Therefore, Plaintiffs' request to certify a class in this matter is **DENIED**.

Section 3 of the FAA provides that, when a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."[78] The action against Citibank is hereby **STAYED** and will be administratively closed pending completion of arbitration pursuant to the express terms of the Arbitration Agreement.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[75] There is no need for the Court to address the fourth factor, whether any nonarbitrable claims should be stayed pending arbitration, because all of Plaintiffs' claims are arbitrable.

[76] *See Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 932 (2013).

[77] (Walters Decl., Exs. 2, 9, 14, ECF No. 12-1; Grayot Decl. Exs. 1, 4, ECF No. 12-2.)

[78] 9 U.S.C. § 3; *see Cendant Corp. v. Forbes*, 72 F. Supp. 2d 341, 342 (S.D.N.Y. 1999) (stating that granting a stay under Section 3 of the FAA is "mandatory if an issue in the case is referable to arbitration.").

Date: August 31, 2016.